SMITH (PEOPLE v.). See Case No. 16,342.

---

## Case No. 13,091.

### SMITH v. PERKINS et al.

[8 Biss. 73; 10 Chi. Leg. News, 49; 4 Law & Eq. Rep. 659.] [1]

Circuit Court, N. D. Illinois. Oct. Term, 1877. [2]

MORTGAGES — TRUSTEES — NEGOTIABLE PAPER— EQUITIES BETWEEN PRIOR PLEDGEE AND SUBSEQUENT LIENORS — CONSTRUCTIVE NOTICE OF RECORD—DUE DILIGENCE.

Where A., a trustee under a deed of trust upon real estate to secure a promissory note, was entrusted with the note for collection, the holder indorsing it in blank, and fraudulently pledged the note before maturity, indorsing it in blank, for a debt of his own to B., who acted in good faith; and subsequently, through mesne conveyances of record which recited the deed of trust, A. took title to the property, assuming the debt secured by the deed of trust, and afterwards obtained loans on the faith of his title, representing the trust note to have been paid, and then exhibiting and recording a release from himself as trustee, purporting to operate before he took title: *Held,* as between B. and the other lienors the former had a better equity, and that the acts and conduct of A., after he became the owner of the land, were not entitled to be considered as those of a trustee.

In equity. This was a bill filed by the complainant [Janet Smith, administratrix, against Norman C. Perkins and others] to enforce an alleged lien upon lots 15 and 16 in block 111, of the school section addition to Chicago, arising under a mortgage or deed of trust, executed by George N. Williams, to Obadiah Jackson, on the 1st of October, 1868, to secure a note of $30,000, given by Williams to Charles C. Waite. The facts in the case, so far as they are material to a decision of this controversy, were substantially as follows: Charles C. Waite, then a resident of the city of New York, was the owner of the property on the 1st of October, 1868, and Obadiah Jackson, one of the defendants, was then an attorney-at-law and resident of the city of Chicago, and the agent of Waite to dispose of it. Accordingly, Jackson, having informed Waite that he had obtained a purchaser, transmitted to Waite, for his signature, a deed to George N. Williams, the alleged purchaser, and Waite duly executed on the 1st of October, 1868, a deed conveying the property to Williams. $10,000 were paid in cash, and two notes were given purporting to have been signed by Williams, one for $6,000, payable in one year, and the other for $30,000, payable in four years, which last note is the one in controversy, the $6,000 note having been paid; and to secure these two

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 4 Law & Eq. Rep. 659, contains only a partial report.]
[2] [Affirmed in 102 U. S. 412.]

notes, Williams on the same day executed a deed of trust to Jackson. These notes were transmitted to Waite, and the note in controversy was by him assigned to his brother, S. M. Waite, then a resident of Vermont. The latter transmitted the note to Jackson, for collection, (the interest being payable semi-annually,) having indorsed it in blank, thus clothing Jackson with authority over the notes, as apparent owner and holder thereof. On the 5th day of October, 1868, Williams, by a warranty deed, conveyed the land to Mary P. Moody, and on the 17th of May, 1871, Mrs. Moody conveyed the land to Dr. C. V. Dyer, by a deed of warranty. On the 1st of June, 1872, Dr. Dyer conveyed the land to Jackson, the trustee in the deed of 1st of October, 1868. All these conveyances, it is admitted, were made subject to the deed of trust already referred to, and stated that the respective grantees assumed and agreed to pay the debt to secure which the deed of trust was given. And in the deed to Jackson, it is recited that the conveyance was made subject to the trust deed, on which was due $30,000 and interest, the payment of which was assumed by Jackson. On the 18th of April, 1871, Jackson being indebted by note for $31,500 to the complainant's intestate, as collateral security for the same, transferred to him the $30,000 note secured by the deed of trust, having written over the blank indorsement of S. M. Waite, "Pay to Obadiah Jackson or order;" and thereupon Jackson indorsed the note in blank, by writing his own name thereon, he acting throughout as the absolute owner of the note. Long after this arrangement was made by Jackson with Smith, Jackson pretended still to hold the $30,000 note, as agent and attorney of Waite, and occasionally made remittances to him to keep up the deception, he having no knowledge or even suspicion that the note had been pledged to Smith. He also continued to pay, till October, 1876, the interest on his note to him. Subsequently, Jackson, claiming to be the owner of the property, and being then considered responsible, though since insolvent, desired to raise money on it, and obtained a loan from the Messrs. Swift, of Philadelphia, alleging that the $30,000 note had been paid, and had been destroyed by the fire of 1871, although it had not yet become due and payable, and he produced to their agent and attorney, in August, 1872, when this negotiation took place, a deed of release from himself, as trustee, to Dr. C. V. Dyer, dated October 2, 1871. This deed of release was not acknowledged or recorded until August, 1872, and was undoubtedly executed about that time, although purporting to bear date on the 2d of October, 1871. All the other deeds were executed at or about the time they bear date, and were within a short time of their date duly recorded. Jackson afterwards attempted to raise an additional sum of money upon the security of this property, and gave a second mortgage or deed of

trust, under which some of the defendants claim a lien.

Van H. Higgins and W. T. Burgess, for complainant.

W. C. Goudy and Orrin Skinner, for defendants.

DRUMMOND, Circuit Judge. The main question in the case is whether the $30,000 note is a valid lien upon the property under the deed of trust of the 1st of October, 1868, given by Williams to Jackson, as against Messrs. Swift and others, defendants, claiming also liens upon the property. I think it is.

Some question has been made whether Williams, the grantee in the deed given by Waite, was a real person. There is no satisfactory evidence in the record that he was a fictitious person; the testimony of Mr. Hoffman who took the acknowledgment of the deed of trust, rather indicates that he was a real person, as he says he never took an acknowledgment unless he knew the grantor, or he was introduced to him as the grantor by some person of his acquaintance. But I apprehend it would make no difference even if Williams were a fictitious person. Waite, through whom the parties claim title, would be estopped from setting up any right to the property after what has taken place.

It is conceded that Jackson perpetrated a fraud in pretending to be the owner of the note, and in transferring it to Smith, when, in fact, he simply held it as agent and attorney; this being so, the question is, who is to suffer by the fraud of Jackson, Smith, or these other defendants who confessedly have advanced their money in good faith, relying upon the security which was given to them by Jackson? I think, under the facts, Smith must be considered a bona fide holder of the $30,000 note for value, and therefore entitled to all the protection which the law gives to the holders of mercantile paper purchased for value before maturity. Goodman v. Simonds, 20 How. [61 U. S.] 343. His lien was prior in point of time to that of the defendants. It was created by deed of trust which was on record and notice to all the world, and in addition to this all the parties, from Williams to Jackson, who received a conveyance of the property, took it with an express recital in each deed that it was subject to the debt secured by the deed of trust; and further, the respective grantees agreed to become responsible for the debt, and pay it; in other words, they took the property subject to the incumbrance, and understanding that, before they could obtain a good title to it, the deed of trust was to be canceled and discharged by the payment of the debt.

Every person taking title to property is bound by the recitals of his title deeds, so, therefore, were all these grantees, and Jackson among the others. But it is said that admitting the Swifts had no right to take the statements of Jackson as to what had become of the $30,000 note, as the evidence shows that their counsel did, even before its maturity,

still when the other defendants advanced money upon the property, there was on record a release, purporting to bear date on the 2d of October, 1871, from Jackson to Dyer, and therefore, that their lien at least was valid, however it might be with that of the Swifts.

As to the lien of the Swifts, objection was made at the time, that there was no release of the deed of trust, and before the money was advanced a release was required, and accordingly it was produced and was acknowledged and recorded in August, 1872, but at the time this was produced and at the time it was undoubtedly executed, Jackson had become clothed with the apparent title to the property —he had ceased to be a mere trustee, and had no claim to the immunities or privileges of a trustee; and neither was his conduct or actions entitled to the same legal presumptions in his favor as if he had been a mere trustee. Therefore, under the circumstances, parties advancing money on the faith of such title had no right to take the declarations of Jackson, or to assume that the release necessarily operated on the 2d of October, 1871, to clothe Dyer with the absolute title to the property, discharged from the operation of the deed of trust. And as to the lien of the other defendants, (and the same rule is applicable to all of the defendants,) there was on the face of the title, upon the faith of which they advanced their money, enough to show that it was their duty to ascertain whether or not the debt, which the deed of trust had been given to secure, was paid.

Jackson took the title on the 1st day of June, 1872, subject to the $30,000 note, and agreed to pay it or to hold his title subject to it. There was, therefore, on the record and on the face of his title at that time, something which contradicted the apparent effect of the deed of release purporting to be made on the 2d of October, 1871, and therefore, the fact that the deed of release was not acknowledged and recorded till August, 1872, was of special significance, because if there had been a deed of release executed on the 2d of October, 1871, the property would have been entirely discharged from the operation of the deed of trust, and the recital in the deed of June 1, 1872, could not be true. So that there was, on the face of the title and the record, enough to rouse suspicion and to show that it was the duty of any person who advanced money upon the title to ascertain whether or not the deed of trust of the 1st of October, 1868, had been in fact discharged. If, then, it be admitted that under ordinary circumstances full effect is to be given to the acts of a trustee as to property which he holds as such, still in this case, Jackson, from the new relation which he assumed, having become clothed with the title, ceased to be a mere trustee, and the rule does not apply, and all parties were required to exercise legal diligence to see that the title was valid and the property released from the lien of the deed of trust by the payment of the debt.

The plaintiff is, therefore, entitled to a decree

to enforce her lien against the property as the prior equity.

This opinion of the circuit court was afterwards affirmed by the supreme court in Swift v. Smith, 102 U. S. 412.